

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415
Tel. (718) 263-9591 Fax. (718) 263-9598

October 12, 2022

<u>**Via ECF**</u>
The Honorable Judge Katherine Polk Failla
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: **<u>Saca, et al. v. Elite Stone Fabricators Inc., et al.</u>**
     **21-CV-6601 (KPF)**

Dear Judge Failla:

Our office represents the Geovanny Saca ("Saca") and Jessica Torres ("Torres") (collectively, the "Plaintiffs") in the above-referenced matters and we submit this motion jointly with counsel for Elite Stone Fabricators and Avni Ahmetaj (collectively, the "Defendants") seeking approval of the Settlement Agreement (attached hereto as **Exhibit 1**) ("the Agreement") as fair and reasonable. The terms of the Agreement were reached with the assistance of the SDNY Mediation Program and following three separate mediation sessions with Court-appointed mediators.

The parties submit that the terms of the Agreement comport with *Cheeks v. Freeport Pancake House*, 796 F.3d 199 (2d. Cir. 2015) and provide analysis using the factors articulated in *Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335-336* as a basis for why the Court should approve the Agreement. Separately, Plaintiffs' counsel addresses their request for attorneys' fees and their fee arrangement with Plaintiffs.

## I.    **<u>The Wolinsky Factors</u>**

The parties analyze the fairness and reasonableness of the Agreement utilizing the factors articulated in *Wolinsky*:

**1.  The Plaintiffs' range of possible recovery:**

**a.  Plaintiffs' Position**

Plaintiffs are two former employees of Defendants who brought this lawsuit alleging that they were not paid proper overtime rates of pay in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL").

Plaintiff Saca alleged that he was employed by Defendants as a stone and marble worker for approximately two years. Saca further alleged that he regularly worked approximately 71.5 hours per week but was compensated based on a flat daily rate of $200.00 per day, which did not increase when he worked in excess of 40 hours per week.

Plaintiff Torres alleged that she was employed by Defendants as a stone and marble worker for approximately two months. Torres further alleged that she regularly worked approximately 71.5 hours per week but was compensated based on a flat daily rate of $150.00 per day, which did not increase when he worked in excess of 40 hours per week.

Applying the "half-time" rate of pay to Plaintiff's overtime claims, Plaintiffs were owed approximately $45,000.00 in unpaid wages, based on the above allegations. Both Plaintiffs also sought liquidated damages and statutory penalties under NYLL § 195 for Defendants' alleged failure to provide compliant wage notices and wage statements during Plaintiffs' employment.

If Plaintiffs were 100% successful on establishing all of their claims at the time of trial, they could have recovered up to $110,000.00. As such, Plaintiffs viewed their reasonable range of recovery to be from $0.00 to $110,000.00.

Although Plaintiffs were confident that they could obtain a judgment for close to the full amount of their alleged damages, Plaintiffs' preference was for a guaranteed outcome through a carefully-negotiated settlement agreement that would allow them to start collecting money in the near future. In advance of the mediations, Defendants provided hundreds of pages of records pertaining to Defendants' financial condition and made the individual defendant available to provide additional information regarding such. Our office carefully reviewed those records and assessed the potential risks of non-recovery even if Plaintiffs were able to obtain a judgment against Defendants after a trial in the distant future. Based on our conversations with Plaintiffs and the assistance of Court-appointed mediators at three separate mediations, Plaintiffs accepted the $45,000.00 settlement amount as it falls squarely within the reasonable range of recovery and accounts for the continued risks of litigation, the time value of money in the near future as opposed to trial at a much later date, and the possibility of non-recovery on a judgment, even if Plaintiffs were to prevail at trial.

## b. Defendants' Position

Defendants' have agreed to settle this matter, as the settlement is reasonable under the circumstances, and factoring in the potential risks and costs should the matter have not settle, and gone to trial. Defendants' also saw the benefit of settlement over the expense and cost of further litigation. Although Defendants do not admit liability, the Defendants are agreeable to the settlement herein.

### c.   The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015).  "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted).  Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $45,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses and records maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after three court-annexed mediations before a Court-appointed neutrals. The parties had genuine, bona fide disputes over the dates of Plaintiffs' employment, the hours worked by Plaintiffs and the pay received by Plaintiffs but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount falls squarely in the realistic range of settlement and allows each Plaintiff to recover a substantial portion of their alleged unpaid wages – a figure disputed by Defendants.

### 2.   The extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing respective claims and defenses":

The settlement still enables the parties to avoid the anticipated burdens and expenses of formal paper discovery, including exchanging interrogatory and document demands and responses on each other, as well as depositions and a trial. Had the parties not reached a settlement, both sides faced significant time and expenses dedicated to conducting at least three party depositions and an undetermined number of non-party depositions. The parties also would have engaged in pre-trial motion practice. Lastly, the parties also anticipated significant time and expenses dedicated to conducting a trial that may have lasted two or three days.

Each Plaintiff would have been required to take multiple days off from his or her current job and Plaintiffs would have incurred expenses preparing exhibits and hiring court-licensed translators for trial and conducting the trial. Defendants would have also been required to dedicate significant time and money toward a trial which would have served as a distraction to operating their business. The settlement gives both parties peace

of mind that they will not incur additional expenses and face an uncertain outcome at trial.

3.  **The seriousness of litigation risks faced by the parties:**

Both parties faced significant risks had they proceeded to trial in this matter.

Although Plaintiffs were confident that they could succeed on all their claims, Plaintiffs recognized the attendant risks of not prevailing at trial and not receiving any recovery. Plaintiffs also could have recovered less than agreed-upon settlement at trial. Moreover, Plaintiffs could have recovered a judgment against Defendants at trial on which they could not collect. The seriousness of this risk favored a guaranteed payment through a Court-approved settlement for Plaintiffs.

Defendants also faced the risk of losing at trial and not only having to pay any potential unpaid wages, liquidated damages and penalties to Plaintiffs but also Plaintiffs' counsel's reasonable attorneys fees, should Plaintiffs have prevailed at a trial.

4.  **Whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel":**

The parties engaged in extensive back-and-forth settlement talks for over one year, including three Court-annexed mediations, the last of which was held on July 22, 2022, with all parties present, and culminated in a settlement-in-principle.

Plaintiffs are represented by counsel who specialize in FLSA and NYLL matters and have settled hundreds of wage-and-hour cases in both New York state and federal courts. Defendants are also represented by counsel who specialize in FLSA and NYLL matters.

The Agreement was the product of continued arm's-length bargaining between experienced counsel and has been carefully tailored to satisfy the criteria articulated for approval by Second Circuit courts.

5.  **The possibility of fraud of collusion:**

Both parties are represented by experienced, competent counsel and the parties have maintained a professional relationship throughout the litigation. There is no possibility of fraud or collusion in this settlement.

II.    **Attorneys' Fees and Distribution to Plaintiffs**

Plaintiffs and Defendants agreed to a global settlement of $44,500.00. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $29,092.00. Each Plaintiff will receive an amount based on Plaintiffs' counsel's individualized calculations of damages, which factor in the alleged length of each

Plaintiff's employment, the alleged hours worked by each Plaintiff, the alleged rates of pay received. Each Plaintiff's share of the settlement proceeds also takes into account the records and defenses maintained by Defendants. Plaintiff Saca will recover $21,592.00 and Plaintiff Torres will recover $7,500.00.

Plaintiffs' counsel respectfully requests $863.00 for identifiable expenses, which include:
- the Southern District of New York filing fee in this matter: $402.00
- the costs of attempted service and actual service of the Summons and Complaint on all Defendants: $461.00

Plaintiffs' counsel respectfully requests one-third of the settlement less their expenses ($43,637.00), or $14,545.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $15,408.00.

**Settlement Amount:** $44,500.00
**Attorneys' Expenses:** $863.00
**Net Settlement Amount:** $43,637.00
**Requested Attorneys' Fees:** $14,545.00 ($43,637.00 / 3)
**Total payable to Attorneys:** $15,408.00 ($14,545.00 + $863.00)
**Total payable to Plaintiffs:** $29,092.00 ($44,500.00 - $15,408.00)

Plaintiffs' attorneys and their clients have retainer agreements that is reduced to writing and is signed by the client. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of this matter and the recovery secured through their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs and the fee arrangement of one-third of the net settlement amount is regularly approved by courts in the Second Circuit.

Furthermore, please see Plaintiffs' counsel's billing records and attorney qualifications attached hereto as **Exhibit 2**.

**III.    Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of multiple Court-annexed mediations, and the terms of the Settlement Agreement comport with Second Circuit case law. As such, we respectfully request that the Court approve the Settlement Agreement and dismiss this action. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

James O'Donnell, Esq.